IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

ALBERTO LLANOS-MORALES,
ET AL.,

Plaintiff,

v.

MUNICIPALITY OF CAROLINA,
ET AL.,

Defendant.

CIV. NO.: 12-1847(SCC)

## MEMORANDUM AND ORDER

Before the Court is the municipal and supervisory defendants' motion for summary judgment. Docket No. 46. After reviewing the parties' filings, and for the reasons explained below, we grant the motion.

On October 10, 2011, Plaintiffs Alberto and Jennifer Llanos were traveling in Jennifer's Toyota Corolla. Docket No. 59,

¶ II.A.[1] Alberto was driving, and Jennifer was in the passenger seat. *Id.* At approximately 3:00 p.m. that afternoon, Jennifer and Alberto were involved in a minor traffic accident that also involved the personal vehicle of Defendant Pedro J. Agosto-Jiménez, an apparently off-duty[2] Carolina Municipal Police ("CMP") officer. *Id.*; *see also* Docket No. 54-9, at 3. After the vehicles stopped, Agosto got out of his car and began yelling profanities at Plaintiffs. Docket No. 59, ¶ II.C. While Jennifer stayed in the car, Alberto got out to talk to Agosto. *Id.* ¶ II.D.

---

**1.** Defendants have not denied any of the uncontested facts proposed by Plaintiffs, which are therefore treated as admitted except as noted below.

**2.** Oddly, Defendants have failed to offer this as a proposed fact, but both parties seem to operate under the assumption that Agosto was off duty. At the least, the record reveals that he was driving a personal vehicle and did not identify himself as a police officer. If he had been wearing a uniform at the time of the incident, this concession would be much less forceful; we are thus convinced that he was off duty and not wearing a uniform at the time of the incident. *See Llanos-Morales v. Municipality of Carolina*, 967 F. Supp. 2d 507, 510 n.2 (D.P.R. 2013) (noting that Plaintiffs had conceded that Agosto was driving his personal vehicle); *see also* Docket No. 19, at 8 (conceding that it is "unquestionable that Agosto was not wearing his uniform, was off-duty and [was] driving his personal car."). That said, the parties would be well-served by actually proposing all relevant and necessary facts for the relief that they seek as part of their summary judgment filings.

Eventually, they agreed to exchange information so that the matter could be handled under Puerto Rico's compulsory insurance scheme. *Id.* ¶ II.E. Alberto then returned to his car and left, *id.* ¶ II.F., but Agosto followed him at high speed, eventually blocking Alberto's car with his own, *id.* ¶ II.G. When Agosto got out of his car this time, he was armed. *Id.* He approached the passenger side, where Jennifer was seated, and insulted her, yelling that they were "trying to get away." Docket No. 54-9, at 4.[3] Alberto then got out of the car and told Agosto to put down his gun and to not point it at Jennifer, since he was the one who had been driving. Docket No. 59, ¶ II.I. Alberto was neither armed nor threatening. *Id.* But Agosto again cursed and accused Alberto of "trying to get away," and then he shot Alberto and left him bleeding on the ground. *Id.* ¶ II.J.

Agosto became a CMP officer in 1994. *Id.* ¶ II.Q. It is undisputed that Agosto graduated from the Police Academy

---

**3.**  Plaintiffs characterize Agosto's statements as saying "that Alberto and Jennifer" were trying to flee the scene of the accident." *See* Docket No. 59, ¶ II.H. As we explain below, it makes sense for Plaintiffs to characterize Agosto's comments this way—it might help overcome a serious problem with their case—but the contention is belied by Jennifer's own statements. *See* Docket No. 54-9, at 4.

of Puerto Rico, and it is further undisputed that he received training in civil rights and violence prevention. Docket No. 54-7. What is disputed is whether Defendants have presented sufficient evidence to support their contention that Agosto was trained in the use of force, including specifically the use of firearms. The summary judgment record further reveals that during his tenure as an officer, Agosto was the subject of two substantiated disciplinary complaints. First, in 1998, he was reprimanded for his use of rude language during a traffic stop. Docket No. 46-1, ¶ 10. And second, in 2010, he was given another reprimand for an unjustified absence. *Id.* ¶ 11. In 2005, moreover, Agosto was referred for an occupational health evaluation after making complaints of asthma and dizzy spells. Docket No. 59, ¶ II.K. Dr. Leonel Shub, the examining phsycian, afterward wrote a report recommending that Agosto's mental condition be examined by a psychiatrist. *Id.* ¶ II.M. Though the CMP adopted Dr. Shub's recommendations regarding Agosto's physical limitations, reassigning Agosto to a desk job, it never referred him for a psychiatric evaluation. *Id.* ¶ II.N. Nonetheless, CMP regulations required Agosto to carry his service weapon at all times, apart from certain exceptions

not applicable to this case.[4] *Id.* ¶ II.P.

These facts reveal a fatal flaw in Plaintiffs' § 1983 case against the supervisory and municipal defendants: there is no evidence that Agosto acted under the color of state law. *See Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (explaining that a § 1983 defendant must have acted under color of state law). Agosto was off duty, out of uniform, and in a private vehicle; he never identified himself as a police officer; and he was involved in an accident with another private party. The only real evidence Plaintiffs have in their favor is the fact that Agosto used his service weapon. *See Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 126 (1st Cir. 1999) (finding the use of a service weapon to be relevant to the inquiry). However, there is no evidence that Plaintiffs knew of the weapon's character. *See id.* (holding that the victim's "subjective reac-

---

**4.** Plaintiffs suggest that the CMP lacks any procedure "pertaining to the use of force, much less the use of deadly force." Docket No. 59, ¶ II.O. To substantiate this proposed fact, Plaintiffs offer an index of CMP regulations. *See* Docket No. 62-4. However, that index shows that CMP *does* have regulations regarding the use of firearms *and* the club, as well as regulations ensuring that these regulations are read and understood. *See id.* Plaintiffs offer nothing about the content of these regulations, which on their face would seem to deal with the use of force. As such, Plaintiffs' proposed fact is rejected.

tions" have some relevance). More importantly, the use of the weapon alone gives little indication that Agosto was "purpos[ing] to act in an official capacity or exercise official responsibilities pursuant to state law." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995). To the contrary, he never identified himself as a police officer, nor did he take any other steps to cloak himself in official authority. Necessarily, then, he was not acting under color of state law. *Id.* at 986–87 ("[A] policeman's private conduct, outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law."). Furthermore, the fact that Agosto said that Plaintiffs were trying to get away is of no moment. The language that Agosto actually used, according to Plaintiffs, did not invoke state authority, and it did not even hint at Agosto's status as a police officer; to the contrary, it is the type of statement one might expect to be made by an out-of-control aggressor in a traffic dispute.[5]

---

**5.** The question would be somewhat closer had Agosto said—as Plaintiffs suggest in their filings—that he was trying to stop Plaintiffs from fleeing the scene. This could perhaps be seen both as "cop talk" and as a show of authority, if a marginal one. Nonetheless, it would probably still not suffice to show that Agosto was acting under color of state law. *Cf. Parilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 450 (1st Cir. 1997)

Agosto was not acting under color of state law, and the motion for summary judgment must therefore be granted.

Furthermore, even if Agosto had been acting under color of state law, we would nonetheless grant summary judgment in the movants' favor because Plaintiffs have presented no evidence of either deliberate indifference or a failure to train. As to deliberate indifference, Agosto had no recorded history of violence, much less one of which his supervisors or the municipality should have been aware. Similarly, while it had been suggested that Agosto have a psychiatric evaluation, the referral does not suggest that Agosto might tend towards violence. As such, the movants had no reason to suspect that Agosto might "violate the constitutional rights of citizens in the manner alleged." *Sanchez v. Figueroa*, 996 F. Supp. 143, 148–49 (D.P.R. 1998); *see also Ramirez-Lluveras v. Pagan-Cruz*, 833 F. Supp. 2d 165, 176 (D.P.R. 2011). And as to training, Agosto was trained at the Police of Puerto Rico's police academy, which "provide[s] guidance concerning the use of deadly force."

---

(holding that an officer was not acting under color of state law where he injured the victim in a private and personal altercation, despite the fact that the officer had identified himself as a police officer and was there to keep the peace).

*Whitfield v. Melendez-Rivera*, 431 F.3d 1, 10–11 (1st Cir. 2005). Furthermore, the CMP do appear to have had specific regulations on the use of firearms. As such, there is no evidence in the record that could support municipal or supervisory liability, even if Agosto had been acting under the color of state law. As such, summary judgment would be warranted on these grounds as well.

For the reasons stated above, the supervisory and municipal defendants' motion for summary judgment is GRANTED. Partial judgment will be entered dismissing those defendants, and only Agosto himself will remain as a defendant in this case. We note, however, that while a summons as to Agosto was apparently issued, service does not appear to have been completed; certainly, no executed summons appears in the record. Thus, within ten days of this Order, Plaintiffs must explain whether they intend to continue pursuing their claims against Agosto, and they must further explain any failure to serve him; otherwise, the case will be dismissed as to Agosto as well.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of June, 2014.

<u>S/ SILVIA CARREÑO-COLL</u>

UNITED STATES MAGISTRATE JUDGE